UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON WASHINGTON,

    Plaintiff,

Case No. 14-12077

Honorable John Corbett O'Meara

v.

EATON STEEL CORPORATION and DERRICK HALLMAN,

    Defendants.
    _____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' FEBRUARY 16, 2015 MOTION FOR SUMMARY JUDGMENT

This matter came before the court on defendants Eaton Steel Corporation and Derrick Hallman's February 16, 2015 motion for summary judgment. Plaintiff Jason Washington filed a response March 9, 2015; and Defendants filed a reply brief March 23, 2015. Oral argument was heard May 7, 2015. For the reasons that follow, the court will grant Defendants' motion.

## BACKGROUND FACTS

Plaintiff Jason Washington is an African American who began his employment as a crane operator with defendant Eaton Steel in 2008, later changing titles to "support tech." In 2012 Washington's worker, defendant Derrick Hallman who is also African American, was promoted to a position as Washington's supervisor. Before the position change, Plaintiff had no issues with Hallman. However, after he became Plaintiff's supervisor, Hallman twice talked to Plaintiff about Plaintiff's performance being subpar.

On October 2, 2013, Plaintiff was involved in an altercation with Hallman in Hallman's office. Donald Love, Plaintiff's union steward, and fellow employee and union representative Sam Stubbs,

both of whom are African American, had been summoned to Hallman's office along with Plaintiff. Mike Avery, Eaton's warehouse supervisor who is white, was also in attendance.

In the meeting Hallman began to complain about Plaintiff's poor performance. Plaintiff responded that he had been asked to train two people and that because he was training them, it may have taken him a little longer to fill an order. Plaintiff claims that Hallman then made the following offensive remark:

> His offensive remark was when Sam Stubbs told Mr. Hallman that Jason doesn't like how you moving him form bay to bay without letting hm finish his work, Mr. Hallman said–I told Mr. Hallman, I said, 'Derrick, you know, when you're doing this, are you putting this in the system since we have a time stamp?' And Mr. Hallman said, 'Yeah, I am doing that for somebody–I have to do that for somebody like you.' And I took that 'somebody like you' like how Caucasians say 'you people' meaning referring to African Americans.

Defs' Ex. 2, p. 70. In response, Plaintiff claims he told Hallman, "I will straighten you[r] glasses." Id. at 69. After that, Plaintiff claims Hallman advised he would take the issue up with Ron Ruit, the plant manager, in the morning and that Plaintiff "walked out and left." Id. at 71.

Stubbs, however, has testified that after Hallman talked to Plaintiff about his performance, Plaintiff "lost his cool" and told Hallman he was going to "knock his glasses off." Defs Ex. 3, p. 68. Stubbs also testified that after Plaintiff said that to Hallman, Stubbs pushed Plaintiff out of the door. Id. He further testified that he would not have pushed Plaintiff out of the office if he had a feeling that Plaintiff was "just being nice" to Hallman. Id. at 101. Stubbs went on to explain that the situation was "about to get physical" and that Plaintiff "stepped towards the man [Hallman]." Id. at 103. Stubbs testified, "I was standing right next to him, like right on right. I was right there. I was right next to him when he plunged toward [Hallman] and said what he said. And I knew he

was hot." Id. at 104. After pushing Plaintiff out of the office Stubbs left to talk to Ruit, who advised Stubbs to let Plaintiff go home and cool off. Id. at 70.

Like Stubbs, both Love and Avery interpreted Plaintiff' conduct as a threat toward Hallman. Plaintiff, however, has testified that his remark about straightening Hallman's glasses meant he wanted to change them so Hallman could see the situation from Plaintiff's point of view.

A few days later, members of Eaton's management team met with union officials regarding what happened in Hallman's office. Based on information provided at the meeting, David Gunsberg, the white vice president of human resources, determined that Plaintiff had threatened Hallman; and Gunsberg made the decision to terminate Plaintiff's employment.

After the court dismissed Plaintiff's claim under Michigan's Elliot Larsen Civil Rights Act, the only remaining claim is a race discrimination claim based on Title VII. Plaintiff states he has pleaded "both a traditional disparate treatment claim and a mixed motive claim." Plaintiff's br. at 14-15.

## **LAW AND ANALYSIS**

In White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008), the United States Court of Appeals for the Sixth Circuit held that the McDonnell Douglas-Burdine burden-shifting framework is not applicable to the summary judgment analysis of Title VII mixed-motive claims. Instead, a plaintiff must produce evidence sufficient to convince a jury that: 1) the defendant took an adverse employment action against the plaintiff; and 2) race, color, religion, sex, or national origin was a motivating factor for the defendant's adverse employment action. Id. at 381. The ultimate question in a mixed-motive analysis is "whether there are any genuine issues of material fact concerning the defendant's motivation for its adverse employment decision, and if none are present, whether the

law . . . supports a judgment in favor of the moving party on the basis of the undisputed facts." Id. at 402.  A plaintiff "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Barnhart v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1389 (6th Cir. 1993).

In this case Plaintiff has failed to produce any evidence that his race was considered in his termination, let alone a motivating factor.  Plaintiff has offered no testimony of racial remarks or demonstrations of racial animus.  Plaintiff contends that Hallman's remark referring to "someone like you" was intended to mean "someone who is African American."  However, defendant Hallman himself is African American.  Moreover, the Sixth Circuit Court of Appeals has found that the phrase "you people" is not, on its face, a term that is race based.  See Arnold v. Marous Bros. Constr., Inc., 211 Fed. Appx. 377, 380 (6th Cir. 2006).  Also, comments made by individuals who are not involved in the decision-making process regarding a plaintiff's employment do not constitute direct evidence of discrimination.  Carter v. University of Toledo, 349 F.3d 269, 273 (6th Cir. 2003); Hopson v. DiamlerChrysler Corp., 306 F.3d 427, 433 (6th Cir. 2002).

To the extent Plaintiff alleges a disparate treatment claim, Plaintiff has no evidence to show that he was treated differently from a similarly-situated person in a non-protected class.  In order for two employees to be similarly situated, "the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the . . . employees who[m] he alleges were treated more favorabl[y]." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994).  The individuals plaintiff Washington claims are similarly situated to him are co-workers Mae, Janus,

Kimbrough, Dompiere and Keck. The only one of those who threatened a supervisor, as opposed to someone else in the workplace, was Keck, who like Plaintiff, was terminated by Gunsberg.

Gunsberg was the sole decision-maker in this case, and he was not employed by defendant Eaton during the other altercations alleged by Plaintiff and had no knowledge of those incidents until after Plaintiff filed this lawsuit. Plaintiff has not identified a single individual who: 1) dealt with the same supervisor as Plaintiff, 2) engaged in the same conduct as Plaintiff, and 3) was disciplined or not by the same decision-maker.

Furthermore, although Plaintiff argues that he was replaced by a white employee after his termination, that employee was hired and worked with Plaintiff while Plaintiff was still at Eaton. That white employee did use Plaintiff's work bay after the termination; however, Richard Johnson, also an African American, was hired to replace Plaintiff.

Plaintiff Washington has also failed to establish that defendant Eaton's legitimate, nondiscriminatory reason for terminating his employment (threatening his supervisor) was mere pretext for discrimination. In order to show pretext, Plaintiff would have to establish that Defendant's proffered reason: 1) had no basis in fact, 2) did not actually motivate the defendant's challenged conduct, or 3) was insufficient to warrant the challenged conduct. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). A plaintiff bears the burden of establishing that other employees outside his protected class "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." Chattman v. Toho Tenax Am, Inc., 686 F.3d 339, 349 (6th Cir. 2012).

In this case Plaintiff has failed to establish that the reason for his termination has no basis in fact. Plaintiff admitted in his deposition that after the incident he wanted to apologize for his

5

behavior. Defs' Ex. 2 at pp. 77-78.  Also, he cannot establish that Gunsberg had anything other than the proffered reason for his termination.  Nor can Plaintiff establish that his conduct was insufficient to warrant termination.  Gunsberg has twice disciplined employees for threatening a supervisor; and both times, with Keck and with Plaintiff, the employees were terminated.

As a final note, Plaintiff offers the deposition testimony of his co-worker Randy Goolsby, who testified that it was his subjective belief that Plaintiff's race was a factor in his termination.  Goolsby stated that he believes that if Plaintiff were white, he would have been given a second chance.  Goolsby further testified that he believes "there have been some differences" between the way black and white employees have been treated by the company.  However, Goolsby was not present during the meeting in which there was the altercation, was not present at the meeting investigating the altercation, and had no role whatsoever in Plaintiff's termination.  Although Goolsby testified that white employees were promoted faster than African Americans, he also confirmed that at the plant where he worked, three of the four supervisors are African American; and each one of them has been employed for less time that the one white supervisor.

## ORDER

It is hereby **ORDERED** that Defendants' February 16, 2015 motion for summary judgment is **GRANTED.**

                                        s/John Corbett O'Meara
                                        United States District Judge

Date:  May 18, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, May 18, 2015, using the ECF system.

                                        s/William Barkholz
                                        Case Manager